UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEPHEN MCGRATH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED OPTOELECTRONICS, INC., CHIH-HSIANG LIN, and STEFAN J. MURRY,<br><br>Defendants. | Civil Action No. 4:18-cv-3914<br><br>JURY TRIAL DEMAND |

## CLASS ACTION COMPLAINT

Plaintiff Stephen McGrath ("Plaintiff"), by and through his undersigned attorneys, alleges the following on information and belief, except as to those allegations pertaining to his own knowledge and conduct, which are made upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Applied Optoelectronics, Inc. ("AAOI" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued and disseminated by AAOI; and (c) review of other publicly available information concerning AAOI.

### NATURE OF THE ACTION

1.  This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired AAOI securities between August 7, 2018, and September 27, 2018, both dates inclusive (the "Class Period"). Plaintiff seeks to recover damages caused by Defendants' violations of the federal

securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2. Founded in 1997, AAOI is a provider of fiber-optic networking products for the internet data center, cable television, and telecommunications markets. The Company is headquartered in Sugarland, Texas, and its stock trades on the NASDAQ under the ticker symbol "AAOI."

3. On September 27, 2018, an analyst with Loop Capital Markets ("Loop") downgraded the Company's stock and reported that the Company was experiencing product quality issues with certain transceivers. According to the analyst, lasers in the transceivers were prone to fail after thousands of hours of operation. The analyst also lowered gross margin and revenue expectations because the product quality issues suggested that the Company would start procuring lasers externally through 2019.

4. On this news, the Company's stock price fell $2.98 per share, or more than 9%, to close at $28.36 per share on September 27, 2018, on unusually heavy trading volume.

5. Then, on September 28, 2018, AAOI reduced its revenue guidance for the third quarter 2018 and stated that it had identified a problem with its lasers that required the temporary suspension of certain transceivers.

6. On this news, AAOI's share price fell more than 13%, to close at $24.66 per share on September 28, 2018, on unusually high trading volume.

7. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) certain of the Company's lasers were susceptible to premature failure; (ii) certain of the Company's

transceivers utilizing these lasers would be materially affected by laser failure; and (iii) as a result of the foregoing, AAOI's public statements were materially false and misleading at all relevant times.

8. As a result of Defendants' wrongful acts and omissions, and the concomitant decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

11. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). AAOI's principal executive offices are located within this Judicial District and many of the acts and conduct complained of herein occurred in this District.

## PARTIES

12. Plaintiff purchased AAOI common stock during the Class Period and suffered damages as a result of the federal securities law violations and/or misleading statements and/or material omissions alleged herein.

13. Defendant AAOI is a Delaware corporation with its principle executive offices located at 13139 Jess Pirtle Boulevard, Sugar Land, Texas, 77478. AAOI's stock trades on NASDAQ under the ticker symbol "AAOI."

14. Defendant Chih-Hsiang (Thompson) Lin ("Lin") founded AAOI and has served at all relevant times as its Chief Executive Officer ("CEO"), President, and Chairman.

15. Defendant Stefan J. Murry ("Murry") has served at all relevant times as the Company's Chief Financial Officer ("CFO") and Chief Strategy Officer.

16. Defendants Lin and Murry are referred to herein collectively as the "Individual Defendants."

17. The Individual Defendants together with AAOI are referred to herein collectively as "Defendants."

18. The Individual Defendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications. Furthermore, the Individual Defendants were provided with copies of AAOI's SEC filings and press releases prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions within the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein were concealed from the public, and that the positive representations made were materially false and misleading. The Individual Defendants are therefore liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

19. AAOI is engaged primarily in the provision of various fiber-optic networking products and their components. Lasers and laser components form the fundamental building blocks of the Company's products which range from laser chips to complete turn-key equipment.

*Defendants' Materially False and Misleading Statements*

20. The Class Period begins on August 7, 2018, when the Company issued a press release announcing its second quarter 2018 results. The press release stated:

> Sugar Land, Texas, Aug. 7, 2018 – Applied AAOI, Inc. (NASDAQ: AAOI), a leading provider of fiber-optic access network products for the internet datacenter, cable broadband, telecom and fiber- to-the-home (FTTH) markets, today announced financial results for its second quarter ended June 30, 2018.
>
> "We are pleased with our second quarter results, which were driven by increased demand for our market-leading datacenter products. We continue to focus on diversifying our customer base and in the quarter secured seven design wins, including one 100G win with a large datacenter operator in China," said Dr. Thompson Lin, Applied AAOI Inc. founder and CEO. "We remain confident in our competitive position. We believe our platform, proprietary manufacturing processes and vertical integration are keys to our success in the market, and remain focused on building on this strong foundation to position AOI for further success."
>
> Second Quarter 2018 Financial Summary
>
> Total revenue was $87.8 million, compared with $117.4 million in the second quarter 2017 and $65.2 million in the first quarter of 2018.
>
> GAAP gross margin was 38.6%, compared with 45.4% in the second quarter 2017 and 39.6% in the first quarter of 2018. Non-GAAP gross margin was 40.4%, compared with 45.5% in the second quarter 2017 and 40.0% in the first quarter of 2018.
>
> GAAP net income was $8.0 million, or $0.40 per diluted share, compared with net income of $29.1 million, or $1.43 per diluted share in the second quarter 2017, and net income of $2.1 million, or $0.11 per diluted share in the first quarter of 2018.
>
> Non-GAAP net income was $12.9 million, or $0.64 per diluted share, compared with non-GAAP net income of $31.3 million, or $1.54 per diluted share in the second quarter 2017, and non-GAAP net income of $5.6 million, or $0.28 per diluted share in the first quarter of 2018.
>
> Third Quarter 2018 Business Outlook
>
> - For the third quarter of 2018, the company currently expects:
> - Revenue in the range of $82 million to $92 million.
> - Non-GAAP gross margin in the range of 40.0% to 41.5%.

5

- Non-GAAP net income in the range of $11.1 million to $15.2 million, and non-GAAP fully diluted earnings per share in the range of $0.54 to $0.75 using approximately 20.4 million shares.

21. On August 8, 2018, the Company filed with the SEC its Form 10-Q for the second quarter of 2018, which iterated the financial information contained in the Company's August 7, 2018 press release. The Form 10-Q contained a signed certification by Murry, stating that the Form 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

22. The statements referenced in ¶¶ 20-21 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) certain of the Company's lasers were susceptible to premature failure; (ii) certain of the Company's transceivers utilizing these lasers would be materially affected by laser failure; and (iii) as a result of the foregoing, AAOI's public statements were materially false and misleading at all relevant times.

*The Truth Emerges*

23. On September 27, 2018, an article in *Benzinga* reported that analyst James Kisner ("Kisner") of Loop downgraded the Company's stock, based on product quality issues and the resulting market consequences. Specifically, Kisner found that the lasers in the Company's 100G CWDM4 transceivers fail after thousands of hours of operation, and the quality concerns could result in market share loss.

24. Kisner noted that while AAOI could solve the problem by procuring lasers from suppliers rather than continuing to produce its own, that move would negatively impact the

Company's gross margins. Kisner's report was based in part on his discussions with industry contacts, one of which stated that the current pricing environment for 100G CWDM4 data center optics is "very tough." Specifically, the average selling price of CWDM4 units is around $250, but could dip to $200 by September of next year, versus Loop's expectations for $300 in the thirdquarter of 2018 and $250 by the third quarter of 2019.

25. The report concluded that the Company is likely to start procuring 25G lasers externally through 2019, which would result in a decrease in 2019 gross margin expectations from 40.5 percent to 34.4 percent, along with expectations for lower revenue stemming from lower selling prices.

26. On this news, the Company's share price fell $2.98 per share, more than 9 percent, to close at $28.36 per share on September 27, 2018, on unusually heavy trading volume.

27. The next day, on September 28, 2018, AAOI issued a press release titled, "Applied Optoelectronics Updates Third Quarter 2018 Revenue Guidance." The press release confirmed much of the information contained in Kisner's report, stating:

> SUGAR LAND, Texas, Sept. 28, 2018 (GLOBE NEWSWIRE) -- Applied Optoelectronics, Inc. (NASDAQ:AAOI), a leading provider of fiber-optic access network products for the internet datacenter, cable broadband, telecom and fiber-to-the-home (FTTH) markets, today updated its revenue guidance for its third quarter ended Sept. 30, 2018.
>
> Applied Optoelectronics currently expects revenue for its third quarter 2018 to be between $55 million and $58 million, below the company's previous guidance of $82 million to $92 million. The company will report detailed third quarter financial results and host a conference call on Nov. 7, 2018.
>
> "During the third quarter, we identified an issue with a small percentage of 25G lasers within a specific customer environment. Consistent with AOI's commitment to supreme product quality and customer support, we mutually agreed with the customer to temporarily suspend shipments of certain transceivers utilizing these lasers while we worked to gain a deeper understanding of the scope of the issue and implement a solution. We have since determined that less than one percent of these lasers were subject to this issue, we have enacted a solution

7

and with the agreement of the customer, resumed shipments," said Dr. Thompson Lin, Applied Optoelectronics, Inc. founder, president and CEO.

"We hold ourselves to a very high standard at AOI and the measures we took this quarter reflect our strong commitment to our customers. We believe that our customers appreciate our willingness to thoroughly resolve any issues, even at the expense of a delay in our revenue, and we believe that we continue to have strong relationships with our customers. Outside of the temporary delay in shipments that impacted our third quarter revenue, sales and shipments as well as the pricing environment were consistent with our prior expectations," continued Lin.

28. On this news, AAOI's share price fell more than 13 percent, to close at $24.66 per share on September 28, 2018, on unusually high trading volume.

29. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

30. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on his own behalf and as a class action on behalf of those who purchased or otherwise acquired AAOI securities during the Class Period (the "Class"). Defendants are excluded from the Class, as are Defendants' affiliates, immediate families, legal representatives, heirs, successors, or assigns and any entity in which Defendants have or had a controlling interest.

31. Throughout the Class Period, AAOI securities were actively traded on the NASDAQ. The exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery. Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by AAOI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32. Questions of law and fact are common to the Class, including, *inter alia*, the following:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of AAOI;

- whether the Individual Defendants caused AAOI to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of AAOI securities during the Class Period were artificially inflated due to Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

33. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of other members of the Class, and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

34. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair their ability to protect their interests.

35. Defendants have acted, and refused to act, on grounds that apply generally to the Class, and are causing injury to the Class, such that final declaratory relief is appropriate on behalf of the Class as a whole.

36. The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

## UNDISCLOSED ADVERSE FACTS

37. The market for AAOI's securities was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements, and/or failures to disclose, AAOI securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired AAOI securities in reliance on the integrity of the market price of the Company's securities and market information relating to AAOI, and have been damaged thereby.

38. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of AAOI securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about AAOI business, operations, and prospects as alleged herein.

39. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or

misleading statements about AAOI's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

### APPLICABILITY OF THE FRAUD-ON-THE-MARKET DOCTRINE

40. The market for AAOI's securities was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, AAOI securities traded at artificially inflated prices during the Class Period. On August 24, 2018, the Company's share price closed at a Class Period high of $42.87 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of AAOI's securities and market information relating to AAOI, and have been damaged thereby.

41. At all relevant times, the market for AAOI's securities was an efficient market for the following reasons, among others:

    a. AAOI's shares met the requirements for listing and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

    b. As a regulated issuer, AAOI filed periodic public reports with the SEC and/or NASDAQ; and

    c. AAOI regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases

on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or AAOI was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

42. As a result of the foregoing, the market for AAOI's securities efficiently digested current information regarding AAOI from all publicly available sources and reflected such information in AAOI's share price. Under these circumstances, all purchasers of AAOI securities during the Class Period suffered similar injury through their purchase of AAOI securities at artificially inflated prices and a presumption of reliance applies.

43. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects – information that Defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**NO SAFE HARBOR**

44. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent that certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of AAOI who knew that the statement was false when made.

**COUNT I**

**Against All Defendants for Violations of**
**Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which deceived the investing public, including Plaintiff and other Class members, and caused Plaintiff and other members of the Class to purchase AAOI securities at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants took the actions set forth herein.

47. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for AAOI securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48. Pursuant to the above plan, scheme, conspiracy, and course of conduct, each Defendant participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases, and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for AAOI securities. The reports, filings, releases, and statements were materially false and misleading because they failed to disclose material adverse information and misrepresented the truth about AAOI's finances and business prospects.

49. By virtue of their positions at AAOI, the Individual Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with such reckless disregard for the truth that they failed or refused to ascertain and disclose facts that would reveal the materially false and misleading nature of their statements. These acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.

50. As the senior managers and/or directors of AAOI, the Individual Defendants had knowledge of the details of AAOI's internal affairs.

51. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Given their positions of control and authority, the Individual Defendants directly or indirectly controlled the content of the statements of AAOI. As officers and/or directors of a publicly held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to AAOI's businesses, operations, future financial condition, and future prospects.

52. As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of AAOI securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning AAOI's business and financial condition, which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired AAOI securities at artificially inflated prices – they relied upon the integrity of the market and/or upon statements disseminated by Defendants and were thereby damaged.

53. During the Class Period, AAOI securities were traded on an active and efficient market. Plaintiff and the other members of the Class relied on either Defendants' materially false and misleading statements or relied on the integrity of the market when they purchased or otherwise acquired shares of AAOI securities at prices artificially inflated by Defendants' wrongful conduct. If Plaintiff and the other members of the Class knew the truth, they would not have acquired AAOI securities at such inflated prices. During the Class Period, the true value of AAOI securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of AAOI securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

54. By reason of the conduct alleged herein, Defendants have knowingly or recklessly, and directly or indirectly, violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class have suffered damages in connection with their purchases, acquisitions, and sales of AAOI securities during the Class Period.

### COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

56. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57. During the Class Period, the Individual Defendants participated in the operation and management of AAOI, and conducted and participated in the conduct of AAOI' business affairs. Because of their senior positions, they knew about the adverse, non-public information regarding AAOI's misstatement of income and expenses and false financial statements.

58. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to AAOI's financial condition and operations and to promptly correct any public statements issued by AAOI in the event that they were no longer accurate.

59. The Individual Defendants controlled the contents of the various reports, press releases, and public filings that AAOI disseminated during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause AAOI to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were

"controlling persons" of AAOI within the meaning of Section 20(a) of the Exchange Act.  In this capacity, their unlawful conduct artificially inflated the market price of AAOI securities.

60. Therefore, each of the Individual Defendants acted as a controlling person of AAOI.  By reason of their senior management positions and/or directorship with AAOI, each of the Individual Defendants caused AAOI to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of AAOI and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by AAOI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B. Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' wrongdoing, plus pre-judgment and post-judgment interest;

C. Equitable and/or injunctive relief as necessary or permitted by law and equity;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

E. Granting Plaintiff such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  October 18, 2018.

            Respectfully submitted,

            */s/ Thomas E. Bilek*
            Thomas E. Bilek
            TX Bar No. 02313525 / SDTX Bar No. 9338
            **THE BILEK LAW FIRM, L.L.P.**
            700 Louisiana, Suite 3950
            Houston, TX  77002
            (713) 227-7720

            *Attorneys for Plaintiff*

**OF COUNSEL:**

Marion Passmore
Melissa A. Fortunato
Shaelyn Gambino-Morrison
**BRAGAR EAGEL & SQUIRE, P.C.**
885 Third Avenue, Suite 3040
New York, NY  10022
Telephone: (212) 308-5858
Facsimile: (212) 214-0506
passmore@bespc.com
fortunato@bespc.com
gambino-morrison@bespc.com